IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiffs,<br><br>vs.<br><br>SAMUEL IZAGUIRRE,<br><br>   Defendant. | 4:20CR3045<br><br>**FINDINGS, RECOMMENDATION<br>AND ORDER** |

Defendant has moved to suppress evidence obtained during the execution of a search warrant issued on May 29, 2020, by the County Court of Lancaster County, Nebraska. The warrant authorized the search of Defendant's person, his residence, and a gray-colored 2011 Nissan Maxima (Nebraska Plate VKT196). Defendant claims the warrant application 1) lacked sufficient facts to support a probable cause finding; 2) was so lacking in probable cause that no reasonable police officer would rely upon its issuance; and 3) after deleting material misrepresentations and adding material information concealed, the warrant affidavit lacks a showing of probable cause. Defendant requests a hearing pursuant to Franks v. Delaware, 438 U.S. 154, 171 (1978). (Filing Nos. 26, 27, 29, and 30).

For the reasons discussed below, the motions should be denied.

STANDARD OF REVIEW

Probable cause exists if, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998) (quoting Illinois v.

Gates, 462 U.S. 213, 232 (1983)). Probable cause is assessed "from the viewpoint of a reasonably prudent police officer acting in the circumstances of a particular case." United States v. Reinholz, 245 F.3d 765, 776 (8th Cir. 2001). "The determination of whether or not probable cause exists to issue a search warrant is to be based upon a common-sense reading of the entire affidavit." United States v. Seidel, 677 F.3d 334, 338 (8th Cir. 2012) (internal quotations omitted).

> [T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants. . . must be tested and interpreted by . . . courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

United States v. Ventresca, 380 U.S. 102, 108 (1965). When a warrant is challenged for lack of probable cause, only the information "found within the four corners of the [warrant] affidavit may be considered in determining the existence of probable cause." United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (citations omitted).

Even if probable cause is lacking, under the Leon good-faith exception, evidence seized pursuant to a search warrant issued by a judge will not be suppressed "if the executing officer's reliance upon the warrant was objectively reasonable." U.S. v. Proell, 485 F.3d 427, 430 (8th Cir. 2007) (citing United States v. Leon, 468 U.S. 897, 920 (1984)). The Leon good-faith exception is not applicable (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge "wholly

2

abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable "; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid. Proell, 485 F.3d at 431 (citing Leon, 468 U.S. at 923).

A warrant affidavit is considered presumptively valid. Franks v. Delaware, 438 U.S. 154, 171 (1978). As such, when a defendant challenges a warrant application, a hearing is not required unless the defendant makes a threshold showing that the affiant deliberately misled the judge, and had the judge known the truth, the application would have been denied for lack of probable cause.

> [T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

Franks, 438 U.S. at 171. Even assuming the defendant shows material information within the application was false, or that material information was omitted, a defendant is not entitled to a hearing unless he first shows that the warrant application, corrected to remove allegedly false information and to add allegedly concealed material facts, would not have supported a finding of probable cause. Franks, 438 U.S. at 170; United States v. Frazier, 280 F.3d 835, 845 (8th Cir. 2002).

3

FACTUAL FINDINGS

The undersigned magistrate judge has prepared a modified warrant affidavit which strikes out (in red) all facts Defendant claims are untrue and adds (in red) all facts Defendant claims were concealed. (See attached). If the affidavit, modified as Defendant suggests, still supports a finding of probable cause, the court need not also assess whether the original version supported that finding or whether a reasonable officer could have believed it did.

The following outlines the facts within the warrant application as corrected to remove the allegedly false information and to include allegedly concealed material facts.

On January 13, 2020 at approximately 8:24 p.m., Lincoln Police Officers were dispatched to the 1800 block of Knox Street regarding numerous gunshots. Defendant Izaguirre resides at 1822 Knox Street #10, Lincoln, Lancaster County, Nebraska. Lincoln Police Officer Boner investigated the shooting and found nine 9mm shell casings, three of which were 9mm Luger FC shells. Izaguirre was never questioned or criminally cited for the January 13, 2020 incident, and while he had several contacts with law enforcement during traffic stops, officers never found him in possession of firearms and gang memorabilia. Izaguirre does not have a prior criminal record for firearms or gang-related crimes.

On February 15, 2020, a drive-by shooting was reported at the residence located at 2519 South 10th Street, Lincoln, Lancaster County, Nebraska. Christian Lupercio Sr., his wife Kimberly, and their children lived in that home. One of those children, Christian Lupercio, Jr., is a member of a known street gang. Feuding between two known gangs has resulted in multiple fights and shootings in Lincoln, Nebraska.

At 9:47 p.m. on May 27, 2020, Lincoln Police Officers were dispatched to the area of 2519 South 10th Street, Lincoln, Lancaster County, Nebraska. A caller had reported that someone in a dark colored vehicle shot three rounds from the vehicle. Numerous other Lincoln citizens reported hearing the gunshots in the area.

Upon arrival at the scene of the shooting, the officers spoke to Kimberly Lupercio and neighborhood witnesses. Kimberly reported hearing three shots, one of which hit the house, and immediately instructing her children to lay on the floor. One witness reported that the vehicle in question looked "like a charcoal car, hatchback 2 door, newer model;" one said the vehicle was a silver four door car; and another reported seeing a silver or black car. One witness reported someone other than Samuel Izaguirre was responsible for the shooting. Another, Dakota Case, stated he heard three shots and saw a black or gray Nissan Altima or similar leave the area at a high rate of speed, but he could not see the vehicle occupants because the vehicle windows were dark and closed. He stated the vehicle drove north on 10th Street and turned east onto Park Avenue.

During the investigation on the night of May 27, 2020, law enforcement officers did not find any gun shell casings.

The shooting was investigated further the following day. Kimberly Lupercio stated that after hearing gunshots, she moved to the front deck and saw a dark colored vehicle driving fast northbound on 10th Street in the east lane and then turning east onto Park Street. She stated that when the vehicle turned east, she saw the rear of the vehicle, including a silver circular Nissan symbol and taillights resembling the taillights of a Nissan Altima she had previously owned. Kimberly

5

Lupercio stated a bullet hit a baluster on her front porch to the right of the entryway, and her husband had found two bullet fragments.

Christian Lupercio, Sr. stated he heard one gunshot, quickly moved toward his front deck, and saw the driver of a dark gray four door sedan holding a handgun out the driver's side window as he shot two additional times. He explained he saw the vehicle as it drove on Lake Street, approaching 10th Street from the east and then turning north onto 10th Street, quickly accelerating and turned east onto Park Avenue. The intersection of 10th and Lake Street is located just to the northeast of 2519 South 10th Street.

Christian Lupercio, Sr. stated he located a bullet on the deck behind the exit point on the baluster. Another bullet that was travelling southwest had struck the gutter above the deck and ricocheted. Christian Lupercio, Sr. stated he found a flattened bullet fragment on the ground, slightly to the south of the deck entry point. Both bullet trajectories appear to corroborate Christian Lupercio, Sr.'s statement that the shots came from the area near 10th and Lake Street. In addition, the affiant officer observed that the flattened bullet appeared to have white paint transfer consistent with striking the gutter and then the residence. The affiant officer collected the bullet fragments from Christian Lupercio, Sr. and turned them into LPD. Investigator Villamonte searched the area near 10th and Lake Street and recovered a 9mm Luger FC shell casing.

At some point prior to May 27, 2020, Lincoln Police had initiated surveillance on a gray 2011 Nissan Maxima sedan with Nebraska Plate VKT196 which was registered to Rosario Martinez, and used by her son, Samuel Izaguirre. As part of its investigation of the May 27, 2020 shooting, the police reviewed its surveillance of Martinez' gray 2011 Nissan Maxima sedan. That surveillance showed that at approximately 9:24 p.m. on May 27, 2020, the Nissan Maxima left Defendant's

6

residential area at 1822 Knox Street. At 9:44 p.m., three minutes before officers were dispatched to the shooting at 2519 South 10th Street, the Nissan Maxima was near 11th and Harrison Avenue, approximately a block and a half from the scene of the shooting. Police surveillance showed that two minutes after the Nissan Maxima was located at 11th and Harrison, it was located at 12th and Van Dorn Street, approximately four blocks from the shooting. At approximately 10:30 p.m., the Nissan Maxima made about a 10-minute stop at the residence of Izaguirre's father. It returned to Izaguirre's residence at 1822 Knox Street at 11:05 p.m.

Additionally, private surveillance footage showed a gray vehicle travelling south on 11th Street at a high rate of speed immediately after the shooting, then turning east on Harrison Avenue. Another private surveillance camera recorded a gray four door sedan travelling at a high rate of speed southbound on 12th Street shortly after the shooting.

The warrant application requested authority to search the Nissan Maxima and Defendant's residence for:

> All firearms, ammunition, containers or firearms related accessories and any documentation or electronic mediums relating to the possession, ownership, or purchase of any firearms. Your Affiant requests permission from the court to access any safe or lockable storage container by any means necessary. Proof of Occupancy for the. residents, any gang memorabilia, and Digital communication devices to include cellular telephones, email devices, tablets, and personal digital assistants.

([Filing No. 28-4 at CM/ECF p. 1](#)). The search warrant was issued on May 29, 2020, by the County Court of Lancaster County, Nebraska and it was executed the same day.

ANALYSIS[1]

I.  Probable Cause

The Fourth Amendment demands that a warrant application meet the essential probable-cause threshold. Franks, 438 U.S. at 164-65. In meeting that constitutional threshold, police must avoid misstatements and material omissions in their presentation to the issuing judge so that the probable-cause determination is made based upon reasonably accurate information. Id. Here, the defendant argues the warrant application fails to show probable cause because the informant statements within it were from witnesses of unknown reliability, the affidavit failed to show a nexus between the May 27, 2020 shooting and the defendant's residence, and information within the application was stale. For the reasons discussed below, these arguments lack merit.

  1. Witness Reliability

Multiple witnesses described observing a dark colored vehicle driving away from the scene of the alleged May 27, 2020 drive-by shooting. Those witnesses – several of whom were named in the affidavit and whose identities were known the police – appear to have a largely consistent account as to the appearance of vehicle, its route of travel, and the timing the events. Kimberly Lupercio told officers that she heard gunshots, told her children to get on the floor, and then moved quickly towards her front porch. (Filing No. 28-3 at CM/ECF p. 1). She says that she observed a car that she recognized as a Nissan, in part due to the circular Nissan symbol affixed to the car, speeding away from her home. (Filing No. 28-3 at CM/ECF p. 2). Another witness, Dakota Case, described seeing "a black or gray

---

[1] The government does not contest Defendant's standing to challenge the search. The court agrees: Defendant had a reasonable expectation of privacy in both the Nissan and the residence as issue. Rakas v. Illinois, 439 U.S. 128, 143-44 n.12 (1978).

Nissan Altima or similar." (Filing No. 28-3 at CM/ECF pp. 1-2). Christian Lupercio Sr. told police that he saw "a dark gray four door sedan." (Filing No. 28-3 at CM/ECF p. 2). Other witnesses claim to have seen a silver, black or charcoal colored car at or near the scene of the alleged drive-by shooting.

Defendant argues that because the witnesses in question did not have a proven track record of reliability, they must be treated with the same skepticism as an anonymous tipster. The Eighth Circuit previously rejected that argument in United States v. Kent, 531 F.3d 642, 648 (8th Cir. 2008). When the police know the identity of a tipster or witness, they are more readily able to evaluate the basis for that person's knowledge, bolstering the officers' ability to evaluate the credibility of the information. There is something of a hierarchy when it comes to the reliability of an informant's information: "Though less reliable than informants with a proven record, unproven informants are more reliable than anonymous tipsters because the police can hold them responsible for false information." Id. Here, the identities of multiple witnesses who observed a dark colored sedan leaving the scene of the May 27, 2020 incident were included in the affidavit.

And regardless of the proven record of any of the witnesses who reported observing a dark colored vehicle, the witnesses' statements were cross-corroborating, and they were further corroborated by police investigation. Based on their surveillance, the police knew the gray Nissan registered to Defendant's mother was in the vicinity of the shooting immediately before and after the shooting. Private surveillance also captured a gray sedan (that resembled the Nissan) in the area, immediately after the shooting. When the police use informants without a track record, the information received may be deemed reliable if it is independently corroborated by the officers' own investigation or cross corroborated through information received from other informants. U.S. v. Nieman, 520 F.3d 834, 840 (8th Cir. 2008).

9

The Eighth Circuit has held that "an affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." United States v. Mutschelknaus, 592 F.3d 826, 828 (8th Cir. 2010). Although Defendant argues the warrant must be suppressed because there was no probable cause to tie Izaguirre himself to the shooting at issue, "[s]earch warrants are not directed at persons; they authorize the search of 'places' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized." Zurcher v. Stanford Daily, 436 U.S. 547, 555 (1978).

As explained, witnesses saw a dark colored vehicle speeding away from the scene of the May 27, 2020 shooting and at least two witnesses believe the vehicle was a Nissan. At the same time, police surveillance puts Defendant's gray Nissan within blocks of alleged shooting. And private surveillance captured a vehicle resembling the Nissan travelling at a high rate of speed near the scene. Even without anything more, the warrant provided sufficient probable cause for the search of Defendant's residence and the gray Nissan.

2. Nexus

Defendant next argues that the affidavit did not establish a sufficient nexus to support a search of Defendant's residence. (Filing No. 28 at CM/ECF pp. 8-9).

A search warrant affidavit must establish "evidence of a nexus between the contraband and the place to be searched." United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000). Factors to consider in determining if a nexus exists include "the nature of the crime and the reasonable, logical likelihood of finding useful

evidence." United States v. Johnson, 848 F.3d 872, 878 (8th Cir. 2017) (citation omitted). Defendant claims that there was nothing in the warrant application that would indicate that firearms, gang affiliated items, or other contraband would be located in Defendant's residence. (Filing No. 28 at CM/ECF pp. 10-11) ("the affidavit contains no information establishing a nexus of any type connecting [the] apartment with the crimes except for the fact that Izaguirre lived there"). The court disagrees.

As discussed above, the Nissan registered to Defendant's mother was under police surveillance. The police knew that Defendant's vehicle left the residence in question at 9:24 p.m. on May 27, 2020 and returned there at 11:05 p.m. the same night. (Filing No. 28-3 at CM/ECF p. 4). In the interim, police surveillance placed the Nissan within blocks of the shooting, and eyewitnesses reported seeing a similar car speeding away from the scene. (Filing No. 28-3 at CM/ECF pp. 3-4). Common sense dictates that there is a nexus between the alleged drive-by shooting and the Nissan/the residence.

Defendant argues that there are no facts tying him specifically to gun possession, gang affiliation, or the alleged May 27, 2020 drive-by. As with the above, the warrant need not reference Defendant himself: warrants are to search places. Zurcher, 436 U.S. at 555. The surveilled Nissan both left from and returned to Defendant's residence. Police and private surveillance, and the eyewitnesses accounts describing the car involved in the shooting, are sufficient to create probable cause that evidence of a crime would could reasonably be located in the Nissan and in the defendant's residence—the location from which the vehicle originated prior to the shooting and to which it returned after the shooting.

11

3. Staleness

Defendant also claims that the warrant was premised on stale information, arguing that "probable cause must exist at the time of the search and not merely at some time earlier." (Filing No. 28 at CM/ECF p. 12) (quoting United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005)). Defendant argues that information in the warrant affidavit related to Defendant's social media and his alleged gang affiliation was stale. (Filing No. 28 at CM/ECF p. 13). But even when that information is excluded, probable cause existed for the search. The information related to the Nissan's locations on the night of the May 27, 2020 incident was anything but stale. The drive-by shooting occurred on May 27, 2020 and the warrant was executed on May 29, 2020. Defendant's staleness objection is without merit.

II. Franks Hearing and Leon Good-Faith Exception

In intertwining arguments, Defendants argues both that he is entitled to Franks hearing and that the Leon good-faith exception does not apply on these facts. These arguments need not be addressed, and a hearing is unnecessary, because after correcting the warrant application as Defendant suggests, the warrant application nonetheless supports a finding of probable cause. However, in the spirit of completeness, the court will briefly address Defendants arguments.

For a Franks hearing, Defendant must make a "substantial" threshold showing that includes specific allegations of deliberate falsehood or of reckless disregard for the truth. Franks, 438 U.S. at 171. Defendant's attack must be more than "conclusory," and it must be supported by more than a mere desire to cross-examine. Id. Allegations of negligence or of "innocent mistake" are not sufficient. Id. The substantiality requirement is not lightly met. United States v. Williams, 477

F.3d 554, 557–58 (8th Cir. 2007) (citing United States v. Wajda, 810 F.2d 754, 759 (8th Cir.1987)).

Defendant argues that the affiant officer intentionally misled the issuing judge, entitling him to a hearing under Franks. Defendant claims that the officer failed to include: the fact that Defendant has minimal criminal history, that some witnesses thought the involved-vehicle was black or silver rather than gray, that the shell casings were not located on the day of the shooting, that one witness thought a man named "Alexi" (who had access to a similar car) was involved in the shooting, that there was allegedly insufficient evidence of Defendant's gang affiliation or gun possession, and that Defendant was not questioned or charged with the previous, January 13, 2020 drive-by shooting referenced in the affidavit. (Filing No. 28 at CM/ECF p. 16).

None of these allegations were intentionally misleading. Eyewitnesses often confuse the color of a vehicle, particularly those seen at night. And when viewed at night, particularly while hearing gunfire, credible witnesses could describe a gray vehicle as black or silver. Under such facts, these discrepancies in the reported color of the vehicle are immaterial. The court is likewise uncertain how excluding the timing of the shell casing's recovery is somehow misleading or improper. The alleged witness statement indicating that a man named "Alexi" was involved in the shooting seems less trivial, especially since he allegedly drove a similar vehicle. But it was Defendant's vehicle that police surveillance placed near the scene, not "Alexi's." Given that, it does not appear misleading to have omitted reference to that unknown individual or his similar car. As to the January 13, 2020 shooting referenced in the affidavit, and the information related to Defendant's potential gang activity and gun use, the court is not convinced that Defendant has met his burden of establishing that any omission was made with deliberate or reckless disregard for the truth.

Moreover, none of the referenced omissions or purported falsehoods was necessary to a finding of probable cause. The court finds that after the warrant was excised of all the detail with which Defendant took issue, and edited to include information Defendant believed material, there was still a sufficient showing of probable cause to search the car and residence. He is not entitled to a Franks hearing.

As to Leon, the analysis is similar. The court finds that the affiant did not recklessly or deliberately mislead the issuing judge, as discussed herein. Nothing in the record indicates that the warrant was facially invalid or that the issuing judge abandoned his role as a neutral and detached judicial officer. United States v. Keele, 589 F.3d 940, 944 (8th Cir. 2009). And, Defendant's argument that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely invalid" is meritless.

So, even assuming if the warrant application was insufficient to support a finding of probable cause, the court finds that the officers acted in good faith reliance upon the warrant when conducting the search.[2] Leon, 468 U.S. at 923.

III.   Particularity

Defendant argues that the scope of the warrant was insufficiently particularized. Defendant claims that "[t]he affidavit should have listed what type of guns, ammunition and type of gang memorabilia to be seized. without [sic] a particularized list describing the items to be seized, the warrant violates his Fourth Amendment rights—plain and simple." (Filing No. 28 at CM/ECF p. 24).

---

[2] The court has focused its analysis on the search of the car and the residence. To the extent that Defendant is challenging the search of his person, suppression is also not warranted. See Leon, 468 U.S. at 923.

"[T]he requirement that a search warrant describe its objects with particularity is a standard of 'practical accuracy' rather than a hypertechnical one." United States v. Young, 2012 WL 2577493, at *7 (D. Neb. July 3, 2012) (citing United States v. Peters, 92 F.3d 768, 769–70 (8th Cir.1996)). "[T]he language must be sufficiently definite to enable the searcher to reasonably ascertain and identify the things authorized to be seized." United States v. Lowe, 50 F.3d 604, 607 (8th Cir. 1995). The description of the items to be seized in the warrant at issue passes that threshold, and the court finds that the warrant is sufficiently particular.

However, even if the warrant were not sufficiently particularized, the executing officers clearly relied on it in good faith – it was not lacking in sufficient indicia of probable cause nor was it so facially deficient as to render such reliance unreasonable. United States v. Jackson, 67 F.3d 1359, 1366 (8th Cir. 1995) (applying Leon and denying defendant's motion to suppress based on lack particularity of the warrant).

IV.   Violation of Fed. R. Crim. P. 41

Finally, Defendant argues that the executing officers failed to leave him a copy of the warrant, as required by Fed. R. Crim. P. 41(f)(1)(C). But, "[a] Rule 41 violation amounts to a violation of the Fourth Amendment warranting exclusion 'only if a defendant is prejudiced or if reckless disregard of proper procedure is evident.'" United States v. Welch, 811 F.3d 275, 279 (8th Cir. 2016) (quoting United States v. Spencer, 439 F.3d 905, 913 (8th Cir.2006)). There is no evidence or argument supporting a claim of prejudice, and nothing to indicate the Rules were recklessly disregarded.

Suppression is not warranted.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motions to suppress and for hearing filed by Defendant Izaguirre, (Filing Nos. 26, 27, 29, and 30), be denied in their entirety.

The Defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the trial of this case is set to commence before the Honorable John M. Gerrard, Chief United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on January 4, 2021, or as soon thereafter as the case may be called, for a duration of three (3) trial days. Jury selection will be held at commencement of trial.

November 4, 2020.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge